UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARTHUR BRAGGS,

              Plaintiff,

     -vs-

CAROLYN W. COLVIN, Commissioner of
Social Security,

              Defendant.
_____

**DECISION and ORDER**
**No. 11-CV-1056(MAT)**

## I.  Introduction

Represented by counsel, Arthur Braggs ("Plaintiff"), brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural History

Plaintiff filed applications for SSI and disability insurance benefits on December 1 and December 5, 2009, respectively, alleging that he was disabled commencing on June 30, 2003, due to lower back pain and leg pain. T. 62-63, 111-14, 117-18, 153.[2] Plaintiff's

_____

[1]  Carolyn W. Colvin has replaced Michael J. Astrue as the Commissioner of Social Security. She therefore is automatically substituted as the defendant in this action pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2]  References to "T.__" refer to the pages of the administrative transcript, submitted as a separately bound exhibit in this action.

claims were initially denied, and a subsequent hearing was conducted before an Administrative Law Judge ("ALJ") on April 5, 2011. T. 33-55, 72-74. Prior to the hearing, Plaintiff amended his alleged disability onset date to April 2, 2010, and withdrew his claim for disability insurance benefits. T. 37, 184. On May 4, 2011, the ALJ issued a written decision denying Plaintiff's claims for SSI benefits on the ground that he was not disabled. T. 19-29. The ALJ's determination became the final decision of the Commissioner on November 15, 2011, when the Appeal's Council denied Plaintiff's request for review. T. 1-4. This timely action followed. Dkt. #1.

Currently pending before the Court is the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. #10. The sole issue to be determined is whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled under the Act from April 2, 2010, to May 4, 2010. For the reasons that follow, the Court finds that the ALJ's decision is supported by substantial evidence, and the Commissioner's motion is granted.

III. **Factual Background**

A.   **Medical Evidence**

1.   **Treating Physicians**

In 1999, Plaintiff was involved in a motor vehicle accident and required surgery for a fractured left leg. T. 209-10.

Dr. Richard Curran began treating Plaintiff on April 2, 2010. T. 215. Dr. Curran noted that Plaintiff exhibited tenderness and walked slowly with a cane. The physician diagnosed Plaintiff's condition as left leg pain, and referred him to an orthopedic surgeon to determine the present status of repair and functional level of the left leg. T. 215. Shortly thereafter, Dr. Curran completed a physical residual functional capacity ("RFC") questionnaire based upon his one-time examination of Plaintiff. Therein, Dr. Curran diagnosed Plaintiff with chronic left leg pain with history of leg surgery and noted the following: (1) Plaintiff's symptoms could constantly interfere with attention and concentration needed to perform simple tasks, and he would be incapable of performing low-stress jobs; (2) Plaintiff could not walk a city block, and could sit only about two hours and stand or walk less than two hours in an eight-hour day; (3) Plaintiff could rarely lift and carry less than ten pounds; and (4) Plaintiff would require a job that would allow him to change positions and permit him to take unscheduled breaks. T. 217-19.

Dr. Joseph Falcone, an orthopedist who performed Plaintiff's leg surgery in 1999, saw Plaintiff on July 27, 2010 upon complaints of worsening pain and numbness in the left leg, weakness in his foot and ankle, and back pain. T. 229-30.  During that visit Dr. Falcone observed diminished reflexes on the left, weakness in his great toe, and pain upon straight leg raises. Dr. Falcone

-3-

believed Plaintiff's symptoms were probably due to lumbosacral radiculopathy and ordered an MRI to determine whether plaintiff had a herniated disc. T. 229-30.

An MRI of Plaintiff's lumbar spine performed on August 20, 2010 revealed minor degenerative changes in the lubmar spine without mass effect or displacement of neural structure, no spinal stenosis or foraminal narrowing, and a slight loss of lumbar lordosis and minor scoliosis. T. 224.

Dr. Falcone saw Plaintiff for follow-up on September 9, 2010, and determined that Plaintiff's complaints were likely due to tendonitis, ligament irritation, sprain/strain, and pes enserine bursitis (inflammation of the knee), and recommended physical therapy. T. 228. He noted that Plaintiff's previous x-ray demonstrated that the leg fracture had "completely healed." Id.

On October 28, 2010, Plaintiff saw Dr. Joseph Kowalski for complaints of lower back pain. T. 236. Dr. Kowalski reviewed the x-ray and MRI, and determined that Plaintiff had no radiculopathy. T. 236.

Plaintiff again saw Dr. Falcone in December 2010, who noted that Plaintiff was making good progress with physical therapy. T. 241.

In March 2011, Dr. Curran completed a second RFC questionnaire, which was revised to reflect that: (1) Plainitff could sit for four hours at one time, and stand and walk for two

-4-

hours at one time; (2) in an eight-hour day, Plaintiff could sit for four hours, and stand/walk for three hours; (3) Plaintiff could frequently lift up to five pounds and occasionally lift up to ten pounds, but could not carry more than five pounds; and (4) Plaintiff could not bend, squat, crawl, climb, or reach, but could use his hands for repetitive action, push, and pull. T. 186-87. Dr. Curran opined that Plaintiff would miss two days of work per month due to pain symptoms, and was thus limited to part-time work. Id.

### 2. Consultative Examination

Dr. Navindra Ramdeen conducted an orthopedic examination of Plaintiff on January 27, 2010, for the State Division of Disability Determinations. T. 209-12. Plaintiff complained of left leg pain since 1999 following a fracture that was somewhat relieved with BenGay ointment and sitting down. T. 209-10. Dr. Ramdeen observed that Plaintiff did not appear to be in any acute distress. T. 210. Plaintiff's examination yielded normal results in all respects, with the exception of being unable to walk on his heels and toes. T. 210-11. Likewise, x-rays of Plaintiff's lumbar spine were negative. T. 211, 213. Dr. Ramdeen diagnosed Plaintiff's condition as lower back pain and left leg pain, with mild limitations in standing and walking long distances, squatting and kneeling, and lifting and carrying heavy objects due to left leg pain. T. 211-12.

**B.    Non-medical Evidence**

**1.    Plaintiff's Testimony**

Plaintiff was born in 1977 and has a high-school education. T. 37. He received training in carpentry and, at the time of his hearing, had completed one semester of college and was currently enrolled in classes twice per week. T. 38-39, 157. He last worked in 2003 in a restaurant in various capacities. T. 39, 154. Plaintiff testified that he stopped working because he could not keep up the pace due to leg and lower back pain. T. 39-40.

Plaintiff stated that he received physical therapy and took Ibuprofen for his pain, and performed some home exercises, which provided a little relief. T. 42, 45.

Plaintiff testified that he could cook, do laundry, and perform routine household chores such as vacuuming, sweeping, and washing dishes. T. 23, 142-43, 151, 210. He was able to shop for groceries and independently use public transportation. T. 46-47. Plaintiff read, listened to music, and played video games, cards, and chess for recreation. T. 46, 48, 53, 141. In a questionnaire completed in December 2009, Plaintiff characterized his daily activities as "basically normal" but that some activities took "a little longer." T. 140, 151. He testified that he would have difficulty standing still, but estimated that he could walk for four hours in an eight-hour day, sit for four hours in an eight-hour day, and probably lift ten pounds. T. 49-51.

**IV.  The ALJ's Decision**

The ALJ applied the well-established five-step sequential evaluation to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. § 416.920. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2003. T. 22. At the second step, the ALJ found that Plaintiff had severe back and knee impairments. Id. At the third step, the ALJ concluded that Plaintiff did not have a listed impairment. Id. He then analyzed the medical evidence to determine Plaintiff's RFC, and found that Plaintiff was able to perform the full range of sedentary work. T. 30-33. Accordingly, the ALJ moved to the fourth step, at which point he found that Plaintiff could not perform his past relevant work as a bus boy, cook, dishwasher, and laborer. T. 28. At the fifth and final step of the sequential evaluation process, the ALJ used the Medical Vocational Rules to find that Plaintiff was not disabled. T. 28-29.

**V.  General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section

directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the

merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

## VI.  Discussion

### A.   Plaintiff's Credibility

In opposing the Commissioner's motion for judgment on the pleadings, Plaintiff contends that the ALJ failed to apply the appropriate legal standards in evaluating Plaintiff's subjective complaints. Pl. Mem. (Dkt. #12) at 10-13.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); <u>accord Gallagher v. Schweiker</u>, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective

-9-

medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see Social Security Ruling ("SSR") 96-7p, (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

Here, the ALJ found that "[Plaintiff's] medically determinable impairments could not reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the ... residual functional capacity assessment." T. 26. Contrary to the Plaintiff's contention, the ALJ did evaluate all of the required factors bearing on Plaintiff's credibility prior to determining his RFC. Pl. Mem. 11.

In addition to the objective medical evidence, which consistently supports only mild limitations in Plaintiff's left

leg, the ALJ considered additional factors such as Plaintiff's daily activities; the nature, location, onset, duration, frequency, radiation, and intensity of pain; type, dosage, and effectiveness of Plaintiff's medication; and any other measures which he used to relieve his pain. See 20 C.F.R. § 416.929(c)(3); SSR 96-7p. At the hearing, Plaintiff testified that he could cook, do laundry, and perform other household chores. T. 23, 142-43, 151, 210. At that time Plaintiff had been attending college classes twice a week and had completed one semester. T. 38-39. He stated that his daily activities were "basically normal" but that some activities took "a little longer." T. 140, 151. Regarding his medication, Plaintiff took Ibuprofen, which he stated provided occasional relief. T. 45, 232, 233, 236. He also took baths and used topical ointment for pain relief. T. 151, 209. This evidence contradicts Plaintiff's complaints that he would need to lie down for up to four hours on a bad day-a complaint that was never reported to any physician and is not supported by Dr. Curran's March 2011 RFC assessment which did not indicate that Plaintiff would need to lie down for any period of time during an eight-hour work day. T. 26. Moreover, although Plaintiff had complained of leg pain since 1999 and back pain since 2006, he did not seek medical treatment from 2003-2007. T. 27.

Because the ALJ's decision contained specific reasons supported by the evidence for discounting Plaintiff's credibility,

he correctly evaluated Plaintiff's statements in making his RFC determination. T. 20; see also SSR 96-7p, supra.

**B.   Treating Source Opinion**

Plaintiff also argues that the ALJ failed to follow the so-called treating physician rule in rejecting Dr. Curran's RFC assessment of Plaintiff. Pl. Mem. 7-10.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so. Saxon v. Astrue, 781 F.Supp.2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. Otts v. Comm'r of Soc. Sec., 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the

opinions of other medical experts. Williams v. Comm'r of Soc. Sec., 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence." Martin v. Astrue, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(c). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

Here, the ALJ did not give the RFC asessments prepared by Dr. Curran controlling weight because the first RFC was not

supported by the one-time treatment notes of the physician and
because the second was not supported by the treatment notes, was
internally inconsistent, and was not supported by other objective
medical evidence contained in the record. T. 27-28. The ALJ
therefore provided the requisite "good reasons" for rejecting Dr.
Curran's RFC assessments.

At the outset, the fact that Dr. Curran's April 12, 2010 RFC
assessment was based upon a single examination that he conducted of
Plaintiff as a new patient is worth noting. T. 25, 27. A treating
source is defined by the regulations as a claimant's "own physician
. . . who has provided [the claimant] with medical treatment or
evaluation and who has, or has had, an ongoing treatment
relationship with [the claimant]." 20 C.F.R. § 416.902. Where, as
here, a physician sees a patient once or twice, he or she does not
have a chance to develop an ongoing relationship with the patient
and is generally not considered a treating source. See Petrie v.
Astrue, 412 Fed.Appx. 401, 405 (2d Cir.2011) (treating sources who
see a patient only once or twice do not have a chance to develop an
ongoing relationship with the patient and thus are generally not
considered treating physicians); Schisler v. Bowen, 851 F.2d 43, 46
(2d Cir. 1988) (defining a "treating physician" as a physician "who
has or had an ongoing treatment and physician-patient relationship
with the individual"). Thus, it is arguable whether the treating
source rule even applies to Dr. Curran's initial RFC assessment.

Nonetheless, the ALJ went on to consider several key factors in deciding what weight to accord Dr. Curran's opinion. See 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight ..., we consider all of the [regulatory] factors in deciding the weight we give to any medical opinion.").

First, Dr. Curran's treatment notes are internally inconsistent and do not support either RFC assessment. Plaintiff saw Dr. Curran four times over the course of a year, yet his treatment notes contain minimal findings. T. 27, 215, 232-34. In July, 2010, Dr. Curran noted that Plaintiff had tenderness in the mid-lumbosacral area and good strength in his legs. T. 232. When Plaintiff visited the doctor one month later, he did not complain of back pain. T. 233. In October, 2010, Plaintiff told Dr. Curran that his back acted up "at times" and that he had "some sciatica," however the doctor reported no abnormal findings and again noted good strength in Plaintiff's legs. T. 234. Treatment notes from March 24, 2011 indicate very similar findings (some tenderness in back, good strength in legs). T. 243. Significantly, Dr. Curran prescribed only Ibuprofen, a nonsteroidal anti-inflammatory, for Plaintiff's pain. T. 232-33. Dr. Curran's records support the remainder of the medical evidence indicating that Plaintiff only had mild, as opposed to disabling, limitations.

Second, Dr. Curran's March, 2011 RFC assessment showed that Plaintiff had a greater functional ability and demonstrated

improvement of functioning as compared to the previous RFC questionnaire from April, 2010. Specifically, Dr. Curran's found that Plaintiff could sit for four hours of an eight-hour day, stand and walk for three hours of an eight-hour day, could lift up to ten pounds, and could carry up to five pounds. This assessment is consistent with the ALJ's conclusion that Plaintiff was able to perform sedentary work[3] and inconsistent with Dr. Curran's own treatment notes.

Finally, the objective medical evidence contained in the record as a whole belie the extent of Plaintiff's purported limitations contained in both Dr. Curran's RFC assessments. The report of Dr. Ramdeen's January 27, 2010 consultative orthopedic yielded unremarkable results, as did the diagnostic imaging tests (x-ray and MRI) which contained only modest findings. T. 209-13, 224, 237, 238.

For these reasons, the ALJ properly discounted Dr. Curran's opinion that Plaintiff was disabled from full-time competitive employment on a sustained basis was not entitled to controlling weight. In any event, the ultimate responsibility for deciding whether a claimant is disabled is reserved to the Commissioner, and treating source opinions on that issue are not given any special

---

[3] Sedentary work is defined by the Commissioner as work requiring lifting no more than ten pounds and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 416.967(a).

significance. 20 C.F.R. § § 416.927(e)(1), (3), <u>accord</u>, <u>Snell</u>, 177 F.3d at 133.

## C.    Vocational Expert Testimony

Plaintiff concludes by arguing that the vocational expert testimony upon which the ALJ relied cannot provide substantial evidence to support the determination of no disability. Pl. Mem. 13-14.

Because the ALJ did not actually seek the testimony of a vocational expert in this case, the Court believes this argument to be made in error as a result of Plaintiff's counsel "cutting and pasting" text from an unrelated brief. It is therefore disregarded.

## VII. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. #10) is granted. The Complaint is dismissed in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**


S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    July 14, 2014
          Rochester, New York

-17-